IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RANDY C. WILLIAMS**                                                                     **PLAINTIFF**

v.                                                                     1:15-cv-394-JCG

**JACQUELINE BANKS, et al.**                                             **DEFENDANTS**

## ORDER DENYING PLAINTIFF'S MOTION TO SHOW CAUSE (ECF NO. 36) AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 41)

BEFORE THE COURT are cross motions for summary judgment: a motion filed by Plaintiff Randy C. Williams entitled Motion to Show Cause (ECF No. 36), which the Court construes as a motion for summary judgment, and a Motion for Summary Judgment (ECF No. 41) filed by Defendants Jacqueline Banks, Hubert Davis, Ron King, Timothy Morris, Jennifer Roberts, and Unknown Coleman. Plaintiff filed a Response in Opposition (ECF No. 44) to Defendants' Motion, but Defendants have not responded to Plaintiff's Motion or rebutted Plaintiff's Response in Opposition. Accordingly, the Court proceeds without the benefit of full briefing on the instant motions. Having considered the submissions of the parties, the record as a whole, and relevant law, the Court finds that Plaintiff's Motion to Show Cause (ECF No. 36) should be DENIED and Defendants' Motion for Summary Judgment (ECF No. 41) should be GRANTED.

I. BACKGROUND

Plaintiff Randy C. Williams filed his Complaint (ECF No. 1) on November 30, 2015. He amended his claims and added new defendants through numerous

subsequent filings (ECF No. 9), (ECF No. 12), (ECF No. 16), (ECF No. 17), (ECF No. 18), and supplemented his claims through testimony at an omnibus hearing[1] held December 8, 2016. Plaintiff is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC") and is currently housed at Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi. However, the events forming the basis of Plaintiff's suit occurred while he was housed at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Proceeding *pro se* and *in forma pauperis*, Mr. Williams alleges that Defendants violated his constitutional rights by failing to protect him from a fellow inmate who posed a known threat to Mr. William's safety. He seeks $750,000 in damages pursuant to 42 U.S.C. § 1983 for violations of his rights under the Eight and Fourteenth Amendments of the United States Constitution.

Plaintiff asserts that, on July 26, 2015, while housed in the protective custody zone at SMCI, Eric Ward, a fellow inmate, stabbed Williams several times in the back of the head and arm while he was watching television. Because "no officers would[] come on the zone[,] another inmate … had to stop the stabbing." (ECF No. 9, at 3). This apparently happened only an hour or so after Ward was moved into the same protective custody zone. He says Ward was moved to his zone because Ward had stabbed another inmate the day prior on another protective custody zone. *Id.* Williams says he suffered "multiple seizure[s]" as a result of the

---

[1] The omnibus hearing functioned as a screening hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

2

stabbing, and had to be "rush[ed] to the hospital by helicopter" because of the severity of his injuries. (ECF No. 1, at 4).

He testified at his omnibus hearing that, at the time of this incident, he only knew of Ward through gang-related business and knew of him by his nickname "E." Williams says Ward is a member of the Vice Lords gang, which had put a hit on him in retaliation for Williams' past participation in some inter-gang conflict. Prior to Ward entering his protective custody zone, there had been no Vice Lord members housed on the zone. He said he had been stabbed in 2012 by another member of the Vice Lords and had been stabbed a second time about a month prior to the July 26, 2015 incident (although he did not specify whether this assailant was a Vice Lord). Williams used to be a high ranking member of the Gangster Disciples gang but says he walked away from his gang affiliation in 2014; however, this decision did not eliminate the target placed on his back by the Vice Lords.

He testified that he did not perceive Ward to be a threat when Ward was moved to his zone, but asserts that Defendants should have known Ward to be a threat because Ward had recently stabbed another inmate the day prior. However, Williams stipulated that he does not believe Defendants moved Ward to his zone so that Ward would harm him. He asserts that Defendants collectively (1) failed to protect him from inmate Eric Ward, (2) failed to house him in a safe location, and (3) failed to follow SMCI policies and procedures. *See* (ECF No. 9, at 2-6); (ECF No. 12, at 1-2); (ECF No. 17, at 2-3).

On January 9, 2017, Plaintiff filed the instant Motion to Show Cause (ECF No. 36), which the Court construes as a motion for summary judgment. Defendants thereafter filed their Motion for Summary Judgment (ECF No. 41) on March 13, 2017.

## II. DISCUSSION

### A. Legal Standard

#### a. Summary Judgment

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-25. If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324-25.

The Plaintiff may not rest upon mere allegations in his Complaint, but must set forth specific facts showing the existence of a genuine issue for trial. *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). In the absence of any proof, the Court will not assume that Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

    b. <u>Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the United States Code), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

If a prisoner is proceeding *in forma pauperis*, and his complaint is dismissed on grounds that it is frivolous, malicious, or fails to state a claim, the dismissal counts as a strike. 28 U.S.C. § 1915(g). If a prisoner receives three strikes, he may

no longer proceed *in forma pauperis* in a civil suit unless he is in imminent danger of serious physical injury. *Id.*

B. <u>Analysis</u>

The Court notes that (1) Defendants do not assert that Plaintiff failed to exhaust his claims and (2) Defendants do not dispute Plaintiff's factual allegations. Rather, Defendants assert in their Motion for Summary Judgment that Plaintiff's allegations fail to overcome Defendants' sovereign and qualified immunity. (ECF No. 42, at 6-7). Plaintiff asserts, in his Motion, that evidence conclusively shows that Defendants knew Plaintiff's life was in danger and took no action to protect him from harm. (ECF No. 36, at 1-4). Accordingly, because the material facts are not in dispute, the record is ripe for summary judgment. *See* Fed. R. Civ. P. 56(a). The Court proceeds to evaluate the merits of these claims.

a. <u>Sovereign Immunity and Monetary Damages</u>

"The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 980 (5th Cir. 1986)). The State of Mississippi has not waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.") "The Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Salinas*, 573 F.

App'x at 372 (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). This is because "a suit against a state official in his or her official capacity … is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, an exception exists for "suits seeking prospective relief for violations of federal law against state officers in their official capacity." *Id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Defendants are all employees and officers of MDOC. Because MDOC is an arm of the state, its officers and employees are therefore employees of the state. *Reeves v. King*, No 1:13-cv-492-KS-MTP, 2015 WL 4616865, at *3-4 (S.D. Miss. Feb. 4, 2015). Thus, to the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, these claims are barred by sovereign immunity.

b. <u>Qualified Immunity and Monetary Damages</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, a government official is entitled to immunity from suit unless (1) Plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

7

i. <u>Defendants Banks, King, Davis, Morris, Roberts, and Coleman were not deliberately indifferent towards Plaintiff's safety</u>

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other prisoners or prison staff. *Hill v. Thomas,* 326 F. App'x 736, 736 (5th Cir. 2009); *Horton v. Cockrell,* 70 F.3d 397, 400 (5th Cir. 1995). However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Hill,* 326 F. App'x at 736 (citations omitted).

In order to prevail on a claim that prison officials failed to protect an inmate from harm, the Plaintiff must establish (1) "that he [was] incarcerated under conditions posing a substantial risk of serious harm" and (2) that the jail official's state of mind towards inmate's health or safety was one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Proving deliberate indifference requires showing that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff asserts that Defendants Banks, King, Davis, Morris, Roberts, and Coleman knew that Plaintiff was subjected to a substantial risk of serious harm and disregarded that risk. Plaintiff stated at the omnibus hearing that he had written a letter to Jacqueline Banks, the Superintendent of SMCI, telling her of the hit placed on him by the Vice Lords. He provided a copy of this letter, dated May 30, 2015, with one of his amendments to his pleadings. (ECF No. 9-1). In this letter, he also

8

asks Defendant Banks to transfer him to Central Mississippi Correctional Facility because he "fear[s] for [his] life [at SMCI]." *Id.* He testified that Defendants Banks responded to this letter stating that she would have him moved, but never actually did move him.

Williams testified that he wrote to Ron King, the former Superintendent of SMCI, but received no response. Williams says he also spoke to Defendant King the day he arrived at SMCI about the threat posed to him by the Vice Lords. As for Hubert Davis, Warden of SMCI, Williams says that Defendant Davis relocated inmate Ward to Williams' protective custody zone after Ward had just stabbed another inmate. Williams testified that he never spoke to Defendant Davis, but wrote him a letter (addressed to the warden) stating that he feared for his life. Williams says that Timothy Morris, former warden at SMCI, was present when Williams spoke with Defendant King, and that Williams also spoke with Defendant Morris a few weeks later about the hit placed on him by the Vice Lords.

Williams testified that Jennifer Roberts, Case Manager at SMCI, was also present during William's conversation with Defendant King the day he arrived at SMCI. He says Defendant Roberts told him that she could not do anything about his situation. Finally, as to Unknown Coleman, a Lieutenant at SMCI, Williams states that Defendant Coleman moved inmate Ward onto his zone and did not put Ward on lockdown despite the fact that he had just stabbed another inmate. Because of Defendants' collective inaction, Williams says that he "had to cut his arm to go to suicidal watch to talk to the mental health counselor about his life being in danger

9

in the P.C. unit." (ECF No. 9, at 4-5). Mental health records submitted with Plaintiff's Motion confirm that he cut himself in order to be put on suicide watch outside of his protective custody zone. *See* (ECF No. 36-4); (ECF No. 36-5).

Given that Defendants do not dispute that Williams made these alleged communications, the Court proceeds under the assumption that Williams did, in fact, make the written and verbal complaints alleged, and that Defendants received them. Defendants also do not seem to dispute that Williams was exposed to a substantial risk of harm. Nonetheless, the Court finds that these allegations fail to create a triable issue of material fact as to whether Banks, King, Davis, Morris, Roberts, or Coleman were "deliberately indifferent" to this "substantial risk" of serious harm.

As an initial matter, to the extent that Williams articulates a theory of liability against any Defendants premised upon respondeat superior, no such liability exists under 42 U.S.C. § 1983. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). Williams seems to allege that no officer timely intervened in the altercation between himself and Ward, but he does not allege that any of the named Defendants were present at the time and in a position to intervene. Defendants may only be made liable under § 1983 for their own actions or inactions, not the actions of any other individual. *Id.*

Williams' communications to Defendants established that members of the Vice Lords wanted him dead and therefore posed a general danger to his safety. But beyond this generalized danger – which Defendants took steps to guard against –

nothing suggests that Defendants were aware that Ward specifically posed a danger to Williams. Williams does not suggest that Defendants knew Ward was a member of the Vice Lords or that he was otherwise paid to attack Plaintiff. Indeed, Williams testified that he did not perceive Ward to be a threat when Ward first came onto his zone. Ward had apparently been involved in an altercation the day prior and stabbed another inmate, but this does not establish that Ward's presence posed a foreseeable danger to Williams' safety. Ward's institutional record notes only that he was cited for "FIGHTING WITH OFFENDER JONAH JACKSON" on July 26, 2015.[2] (ECF No. 41-1, at 1). Thus, "[i]t is unknown now, and it was certainly unknown on July 2[6], who started the earlier altercation between Ward and another inmate." (ECF No. 42, at 7).

To the extent that Defendants were aware of a substantial risk of harm to Williams, Defendants took reasonable steps to try to keep him safe. First and foremost, he was placed on protective custody. He had previously been moved around among different units at WCCF, then moved to SMCI, and then moved between different units at SMCI before being placed in protective custody. *See* (ECF No. 41-4). Additionally, entries from Williams' Running Record indicate that Felisha Sargent, an SMCI staff member, attempted to transfer him to another facility in March 2015, but was unable to do so without an inmate swap from the protective custody unit at Mississippi State Penitentiary ("MSP") in Parchman,

---

[2] The Court finds this discrepancy between Ward's institutional record – which states he fought with another inmate on July 26, 2015 – and Williams' allegations – which state that Ward attacked another inmate on July 25, 2015 and attacked Williams on July 26, 2015 – to be immaterial.

11

Mississippi: "Informed offender rec'd email about transfer issue to MSP; per Ms. Bivens offender will not transfer unless there is a PC offender swap; offender cited no other issues or concerns." (ECF No. 41-3, at 1). Even after Williams was stabbed by Ward, Williams could not be immediately moved from SMCI because inmates he had red-tagged were presently housed in the protective custody units in other facilities. *See id.* at 2. In short, staff members at SMCI made reasonable efforts to safely house Williams, but the presence of numerous red-tagged inmates in the protective custody units at other MDOC facilities made it difficult to promptly move him from SMCI when Williams so requested. *See* (ECF No. 41-2).

When viewed in the context of the numerous prior moves that staff at MDOC had arranged for Williams, as well as his protective custody status, it is clear that Defendants attempted to address the threats Williams reported and attempted to keep him safe. *See Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006) ("We have previously held that responding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's protective duties under the Eighth Amendment.") (quoting *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004)). Defendants were handed a difficult task in keeping Williams safe. Indeed, Williams created a populous band of enemies through his prior gang activity. Defendants sought to protect Williams from this threat, but this threat remains ever-present: gangs are unfortunately an unavoidable presence in prison life. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1518 (2012)*; Lewis v. Richards*, 107 F.3d 549, 557

(7th Cir. 1997) (Flaum, J., concurring); *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2015 WL 3795020, at *13 (S.D. Miss. June 10, 2015), *appeal dismissed sub nom. Depriest v. Fisher*, No. 15-60488, 2016 WL 5400415 (5th Cir. Sept. 27, 2016).

At most, Williams' allegations establish that Defendants might have been negligent in failing to have him moved from his protective custody zone at SMCI sooner, but "negligent failure to protect an inmate is not tantamount to a constitutional violation." *Simpson v. Epps*, No. 5:10-CV-15-MTP, 2010 WL 3724546, at *3 (S.D. Miss. Sept. 15, 2010) (citing *Dilworth v. Box*, 53 F.3d 1281 (5th Cir. 1995)); *see also Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

    ii.    <u>Plaintiff does not have a liberty interest in his housing classification</u>

To the extent that Plaintiff's claim that Defendants' failed to safely house him can be construed as challenging his classification and housing assignment, his claim must fail as a matter of law. A prisoner has no protectable Fourteenth Amendment liberty interest in his classification by prison officials. *Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003). "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Id.* (quoting *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990)). Indeed, "it is well settled that '[p]rison officials

13

must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *Id.* (quoting *McCord*, 910 F.2d, at 1250).

    iii.    <u>Failure to follow prison policies and procedures does not amount to a constitutional violation</u>

Plaintiff's claims premised upon Defendants' alleged failure to follow MDOC and/or SMCI policies and procedures in failing to protect him from inmate Ward must fail as a matter of law. "[V]iolations of prison rules do not alone rise to the level of constitutional violations and, therefore, such claims are not actionable under § 1983." *Scheidel v. Sec'y of Pub. Safety & Corr.*, 561 F. App'x 426, 427 (5th Cir. 2014) (citing *Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir. 1986)).

### III. <u>CONCLUSION</u>

The Court has determined that Defendants are each entitled to sovereign immunity and qualified immunity against Plaintiff's claims. Defendants are therefore entitled to summary judgment and Plaintiff's claims will be dismissed with prejudice.

Accordingly, **IT IS HEREBY ORDERED**, that Plaintiff's Motion to Show Cause (ECF No. 36) is **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 41) is **GRANTED**. Plaintiff's claims against Defendants are dismissed with prejudice.

**SO ORDERED AND ADJUDGED,** this the 26th day of September, 2017.

                          *s/ John C. Gargiulo*
                          JOHN C. GARGIULO
                          UNITED STATES MAGISTRATE JUDGE